FRANK A. SEYMOUR *et al vs.* THE CARGILL ELEVATOR COMPANY.

Opinion filed April 28th, 1897.

**Conversion—Sufficiency of Demand.**

> Where plaintiffs, claiming certain grain under a chattel mortgage, demanded the delivery to them of the grain before suit was brought for converting the grain, such demand being made of defendant's agent in charge of one of its elevators located within this state in which the grain was stored at the time of such demand, *held,* that such demand was sufficient, as against the elevator company.

Appeal from District Court, Cass County; *McConnell,* J.

Action by Frank A. Seymour and others against the Cargill Elevator Company. Judgment for plaintiffs, and defendant appeals.

Affirmed.

*John D. Benton,* for appellant.

*Ball, Watson & Maclay,* for respondents.

WALLIN, J. This action was brought for damages for the conversion of a quantity of wheat. On plaintiffs' motion, a verdict was directed for plaintiffs. The facts which must control the decision of the case are, briefly stated, as follows: The Walter A. Wood Harvester Company, which is represented in this action by the plaintiffs, to secure two promisory notes given by one Englund to said company, took and filed for record a chattel mortgage from said Englund, covering a crop of grain raised by Englund in the year 1895. Englund did not own all of said crop, as a part thereof was to be applied as a crop payment for the land. It appears that the crop in question was divided, and that Englund deposited his share (some 300 bushels) in his own granary on the land. Subsequently, and when the chattel mortgage was of record and unpaid in whole or in part, Englund sold the grain to the defendant, and said grain was delivered by him to the defendant, and was placed in its elevator at Page, in this state. The grain was received into the elevator, and paid for by

one Huff, who at all times in question was the agent in charge of the elevator into which the grain was received. There is no evidence in the case tending to show that the defendant actually converted the wheat, by mixing it with other wheat, or by removing it out of the state, or otherwise. After the grain had been sold and delivered to the elevator company, and prior to the commencement of the action, to-wit, on October 10, 1895, an agent of the harvester company went to the office of the elevator company in said elevator, at Page, where the grain then was, and then and there demanded a delivery of said wheat to the plaintiff, under said chattel mortgage. Said demand was made of said Huff, who was then in charge of the elevator at Page. The demand was not complied with, but was refused. One F. H. Dickinson testified in plaintiff's behalf, in substance as follows: "I was the general agent of the owners of the land on which the crop of grain was raised. There was a certain payment to be made on the land, and the balance of the crop was to go to Englund. The crop was divided. After the division, Englund had authority to dispose of it. I was also at the time of these transactions engaged in handling machinery for the Walter A. Wood Harvester Company, by whom I was employed. I took the notes in question for payment on binders, and the mortgage to secure the notes. I was the agent of the Wood Company at the time the mortgage sale was made of said binders. I had no knowledge that Englund intended to sell the grain to the elevator company." On this evidence, the claim is made in this court by counsel for the appellant that the Wood Harvester Company (through their agent, Dickinson) waived and lost the lien of their mortgage. We think this claim is without merit. It is quite true, and we have recently so held (see *New England Mortgage Security Co.* v. *Great Western Elevator Co.*, 6 N. D. 407, 71 N. W. Rep. 130,) that where a mortgagee of chattels especially authorizes the mortgagor to sell the property described in the mortgage, and out of the proceeds to pay the debt to the mortgagee, such authorization, if followed by such sale, will operate to waive the lien, and that in such case the

fact that the mortgagor failed to pay the debt secured by the mortgage, out of the proceeds of such sale or otherwise, will not reinstate the lien of the mortgage. But we can discover no such state of facts, nor any equivalent facts, in the case at bar. It nowhere appears that the mortgagee, or any of its agents thereunto authorized, ever authorized Englund to sell the grain, or knew that Englund contemplated a sale to the defendant, or at all. Nor is there a scintilla of evidence that Dickinson ever had the notes in his hands for collection. It does appear that Dickinson took the notes originally in payment for machinery, and that he was still the agent of the harvester company when there was a foreclosure sale of such machinery, under the mortgage; but it does not appear that Dickinson was the agent who supervised such sale, and, if it did so appear, it would not follow that he had any authority to collect the debt, as against the defendant. The fact that Dickinson states that Englund had authority, after the grain was divided, to sell his own share, is not important. That fact is a mere conclusion of law. Nor does the fact that Englund had a right to sell his own property militate against the validity of the mortgage lien, or tend to show that Dickinson waived the lien of the mortgage, or had authority to do so from the mortgagee.

Appellant's counsel makes the further point that a demand and refusal to deliver must appear to have been made in cases like this, where no actual conversion is shown, and that the evidence fails to show that any sufficient legal demand was ever made upon the elevator company for the wheat in question. Appellant's counsel says in his brief: "That the sole authority actually conferred was the right to purchase grain for the defendant, receive it into the elevator, and give to the seller or depositor some evidence of the sale or deposit. There is no evidence that Huff had any actual authority to dispose of the wheat purchased by him, or to surrender it upon the demand of third persons claiming to be the owners of it, without referring the matter to his principal." The result of the evidence touching the demand

is thus fairly stated by counsel, and upon it the question is presented whether the demand upon the agent in charge of the elevator where the wheat was sold and received, and where, under the evidence, it must be presumed to have been at the time of the demand, is a sufficient demand upon the owner of the grain, the Cargill Elevator Company. In holding the demand sufficient, we might rest the ruling upon express authority. *Deeter* v. *Sellers*; 102 Ind. 459; *Lundberg* v. *Elevator Co.* (Minn.) 43 N. W. Rep. 685. In the latter case a quantity of grain was deposited with the elevator company, as bailee thereof, and, before suit brought, the plaintiff, who claimed under a chattel mortgage, demanded the possession of the grain of the agent in charge of the elevator where the grain was deposited. In deciding the case, the learned court used the following language: "The demand of the possession of the wheat in controversy before suit brought was properly made by plaintiff or his attorney upon the agent in charge of the elevator, and with whom the arrangement for its deposit therein was made." It does not appear that the evidence in the Minnesota case showed that the elevator agent had any authority other than the authority to receive the wheat on deposit, and is therefore in this respect like the case at bar. In the Indiana case (opinion by Judge Elliott) the court held that no demand was necessary, because the taking was tortious, but further said: "Where a demand is necessary, it is sufficient to make it of the agent in possession of the property."

There seems to be no little conflict of authority upon the question of the sufficiency of demands made upon agents for the possession of property belonging to their principals in their possession, where a demand is held to be necessary before bringing replevin or suing for the conversion of such property. In the confusion which prevails in the cases, we do not deem it necessary or wise in this case to lay down any inflexible rule for the government of all cases hereafter arising. Under some well-considered authorities, each case seems to depend upon its own peculiar facts, and a demand will be held sufficient or otherwise,

depending upon the relation held by the agent to the subject-matter of the property demanded, and the nature of the agent's business. Applying this rule to the case in hand, we find that the agent of the defendant had the usual authority and powers conferred upon elevator agents in this state in charge of the elevators of non-resident corporations. They are a very numerous class of agents, and their relations to the farmers and business-men of the communities where they are stationed is of a vitally important nature. The great bulk of the grain raised in the state passes out of the state, through the instrumentality of these agents and the elevators, which, as a rule, are in their sole care and keeping. Speaking in general terms, the public sees no representative of the owners of the elevator lines except the agent in charge of the elevator. From him the market price of grain can always be ascertained, and sales are made directly through his agency to the non-resident owner of the elevator, and the sale of the grain by the producer is made only through the agent, and is rarely made to any other representative of the owner. It is a matter of common knowledge (of which courts are chargeable with notice) that the great majority of the elevators located within this state, as is true of the defendant's elevator in question, are owned by non-resident corporations, who have never estalished a general office or managing agency within this state, and the officers of which are not generally known, and, in the nature of things, cannot be generally known, to the people of this state. As a rule, these non-resident corporate bodies do all their business with the people of this state through agents in charge of local elevators, situated usually at railroad stations. Such agents are something more and different from a mere servant, who may be temporarily in custody of property belonging to his principal, but who has no responsibility with respect to the same other than that of a mere custodian. The agent in charge of an elevator must, in view of the responsible trust devolving upon him, be a man of intelligence and fair business judgment. Such a man, upon a demand being made upon him by a

stranger for grain in an elevator in his charge, would, unless his previous instructions covered such a case, immediately communicate with his non-resident principal, and thereby afford an opportunity to his principal to investigate the case, and give the agent final instructions in the premises. Communications between principal and agents are easy, rapid, and of constant occurrence; while, on the other hand, there is usually no communication between the depositor of grain in an elevator and the managing official of the corporation owning the elevator. If the party demanding grain in a local elevator should be compelled to make his demand of some non-resident official of the corporation, he would first be obliged to ascertain where the managing office is situated, and, learning that, he would then be bound at his peril to search for and find that particular officer, clothed by the corporation with authority to surrender grain to an outsider who might claim it. Nor do we think it very probable that any agent or officer would be readily found who had general authority to make such delivery in all cases. In view of these considerations, we should deem it not only a rule of intolerable harshness to require the demand to be made of a non-resident official, but such a rule, in many cases, would, in our judgment, amount to a practical denial of justice. We should therefore, in the absence of authority, hold that a demand, when made of the agent in charge of an elevator where the grain is stored at the time, is sufficient, as against the elevator company. We think the question of the sufficiency of the demand in such a case cannot be governed by mere instructions given by the principal to his agent, but must be controlled by general principles of law and public policy. It will not be necessary, therefore, to determine the question whether evidence of usage tending to show that elevator agents have no authority to deliver grain to any one, without instructions from headquarters, was improperly excluded from the jury in this case. Such usage or such instructions, if any were given, do not control the public, nor determine the rights of the public.

N. D. R.—29.

Finding no error in the record, the judgment will be affirmed. All the judges concurring.